Good afternoon. The first case from this afternoon's docket is the case of the in re marriage of Nick Cowser versus Stephanie Cowser, and we have Julie Thompson for the appellant and of Yaclias Wade. You may proceed, Ms. Thompson. May it please the court. My client Nick Cowser and I are here today asking this court to overrule the decision made by the trial court in this case. These parties, Nick and his wife Stephanie, were married in May of 2009 and divorced in March of 2011. They have one daughter, AC. She was born in December 2007 and is now almost eight years old. The parties were not represented by counsel in their divorce. Each of them were pro se, and they generated a joint parenting agreement with regard to custody matters for their daughter. They did place primary residential custody of the child with the child's mother. There were, as there often are, some difficulties and problems subsequent to the divorce judgment, and in October 2013, Nick Cowser filed a petition seeking modification of the custody provisions in the joint parenting agreement. There was an investigation. There was a guardian ad litem appointed by the court who did a very thorough investigation, and her report is included in the appendix in the appellant's brief. What is also included in the appendix is the actual written order entered by the trial court in this case, and it is a bit of a unique and unusual order that was generated in the lower court. First, in order to modify a custody judgment, the trial court has to find clear and convincing evidence that there's been a change in the circumstances of the parties of the child that necessitate a modification of custody, and secondly, that modification is in the best interest of the child. What the trial court did in the order that was entered November 2014 denying the motion to modify custody was attempt to take corrective measures. All of the issues that were raised in the modification of custody, the court acknowledges as having been problems and then subsequently orders the mother to correct those conditions. So the trial court ends up ordering that the minor child will have a bath or shower every day, that she will wear her own clothing, and that they will be age and size appropriate and clean. It prohibits the mother from engaging in the raising of puppies or dogs in her home without further order of the court, as the animals and the mess created by the animals had been an issue in the trial court. Rather than see these issues raised by Mr. Couser as problems requiring a modification of custody, the trial court instead attempted to order the mother to make some corrections to those conditions. In doing so, the trial court leaves out what in our minds is the most significant issue that was raised in the trial court, being the mother's failure to facilitate a close and continuing relationship between the minor child and the father. The best predictor that we have of future behavior is past behavior. As humans, we all recognize and know that about ourselves and about each other. In this particular case, while the petition to modify custody was pending, the mother was hired by the Illinois Department of Corrections to be a prison guard. That employment necessitated her having a six-week training period that was going to occur in Springfield. The mother failed to disclose her hiring to my client, and my client, in fact, found out about it through the efforts of the guardian ad litem. The guardian ad litem had developed a relationship with the father of my client's daughter's sister. Stephanie's first ex-husband, and Stephanie had a daughter with her first ex-husband, an older sibling to this child. The guardian ad litem discovered through a conversation with that gentleman that the mother had been hired by the Department of Corrections and, in fact, would be gone for six weeks of summer. That would have been the summer of 2014. The guardian ad litem brought that to my client's attention. My client had no prior knowledge of it, and my client's trial counsel immediately contacted Stephanie's trial counsel and expressed that my client would be very interested in having that time with his child while Mother was gone for her training. Mother refused. It necessitated the filing of an emergency motion in the trial court in a hearing for my client to receive those six weeks of summer visitation with his daughter. Now, in the original joint parenting agreement signed by these parties, there was a provision that if either party was unable to be with the child during their time, the other party would get what we commonly refer to as a right of first refusal. If the person who's supposed to have the child can't be with the child, then the other party is the party who is supposed to have the option first of having the child with them. That was not honored by the mother in this case. Obviously, my client was not given that opportunity. The trial court took action and did order that the child be with my client for those six weeks of summer training that the mother had to go through. I think what's most significant about that is that it happened during a motion to modify custody. Even knowing that the potential existed that her child's custody would be modified, the mother took that position. That demonstrates to this court the level of hostility that she directs towards this child's father. There is nothing that exists in this record that justifies the level of hostility that she displays towards this child's father. Nothing. There is no history in this family of violence, of drug abuse, of substance problems, of anything that would cause the mother to have concerns about her child being with the father for that period of time. My client, in his conversations with the guardian ad litem, not only expressed his frustration regarding that, he expressed his fear for the future. If she was willing to go to that extent while a modification is pending, what's going to happen to his relationship with his daughter if this motion is denied? And we can all imagine what it has been since. The trial court, in its order, while requiring the mother to provide clean and appropriate clothing for the child and to make sure that she bathes on a daily basis, did nothing to rectify the problem with regard to the requirement that the mother facilitate a close and continual relationship between my client and this child. Maybe it was obvious to him that it wouldn't matter what he said in light of what had happened. It wasn't likely to make a difference in the attitudes of anyone. That is not what joint custody is supposed to be about. Despite all of those things, my client has insisted that he would prefer that the parties in this case remain joint custodians of this child. He believes it to be in the child's best interest and so expressed to the trial court. We are asking this court find that the trial court erred, that the decision was against the manifest way of the evidence and award custody of the child to my client. Maintain the joint custodial arrangements between the parties and grandmother visitation rights with the child. No questions. Thank you, Mr. Thompson, for your brief. And your arguments will take the matter under advisement and under a ruling in due course. And we will stand in recess. All rise.